UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANDRE PRESTON                                    CIVIL ACTION

VERSUS                                           NO.  16-13042

DARRYL VANNOY                                    SECTION "F"(4)

REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

I.   Factual Background

The petitioner, Andre Preston ("Preston") is a convicted inmate incarcerated in the Louisiana State Penitentiary, in Angola, Louisiana.[2]  On March 4, 2010, Preston was charged in an indictment in Jefferson Parish with the attempted second degree murder of Cary Smoot in violation of La. Rev. Stat. Ann. § 14:27:30.1 (count one); the second degree murder of P.D.[3] in violation of La. Rev. Stat. Ann. § 14:30.1 (count two); possession with intent to distribute cocaine in violation of La. Rev. Stat. Ann. § 40:967A (count five); and possession of a firearm while in

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 10, Indictment, 3/4/10, Grand Jury Return, 3/4/10.  In accordance with Louisiana law, the victim was identified by initials to protect her identity.  La. Rev. Stat. Ann. § 46:1844. This Court will continue to identify the victim in the same manner

possession of marijuana in violation of La. Rev. Stat. Ann. § 14:95(E) (count six).  Preston initially entered pleas of not guilty in the case.[4]

The record reflects that there was an ongoing dispute between Preston, Louis Smoot, and Roger Chairs in the River Ridge area referred to as "The Dump."[5]  On September 12, 2009, as Cary Smoot, Louis Smoot's cousin, was leaving Advance Auto Parts on Airline Highway in Kenner, Preston exited a vehicle and shot at Smoot at least 17 times with an AK-47.  As Smoot's vehicle had been shot three times, he drove only a few blocks before he abandoned his vehicle. Walter Bailey, Smoot's friend, picked up Smoot, and Bailey drove him to a police officer.

Cary Smoot flagged down Officer Amanda Roh of the Kenner Police Department on Kenner Avenue.  Cary Smoot, who was in an excited state, explained to Roh he had just been involved in a shooting.  While Smoot showed Roh a wound on his back, it was later determined that it was not a gunshot wound.  Smoot identified two names: "Roger" and "Kareem."

Preston's friend, Johnny Campbell, heard the shooting and witnessed Cary Smoot get picked up in a car and speed off.  Campbell went to Preston's house and told him that Cary Smoot had been the target of a shooting.  Shaquille Preston, Preston's brother, was at home with Preston when Campbell arrived.  Campbell and Preston walked to Campbell's house and watched the police investigation of the incident.

Law enforcement recovered fourteen casings from the September 12, 2009, shooting. Jene Rauch, an expert in the field of firearm and toll mark identification from the Jefferson Parish

---

[4]St. Rec. Vol. 1 of 10, Minute Entry, 3/12/10.

[5]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal.  *State v. Preston*, 118 So. 3d 1129 (La App. 5th 2013); St. Rec. Vol 2 of 10, 5th Cir. Opinion, 12-KA-798, 5/16/13.

Sheriff's Office Crime Lab, determined that all fourteen casings were of the same type and were consistent with having been fired from an assault-type weapon such as an AK–47.

Kirk McKenzie, an acquaintance of Preston and Roger Chairs, claimed that Preston told him Chairs was driving while Preston shot at Cary Smoot with an AK–47. Preston denied shooting at Cary Smoot. He claimed that he and Cary Smoot were friends and that he had no issue with Louis Smoot. Preston claimed that he was at home with his brother on September 12, 2009, when Campbell came to his house and told him that someone shot at Cary Smoot. Preston asserted that Chairs admitted to him that he had shot at Cary Smoot. Preston alleged that he met with Cary Smoot a few days after the shooting and told him he was not involved in the incident.

On September 18, 2009, Kenner Police Department Detective Jeff Adams interviewed Cary Smoot. Smoot identified three people involved in the shooting: Chairs as the driver of the vehicle, Preston as the shooter, and Kareem Nicholas as a passenger. Law enforcement issued arrest warrants for all three suspects.

On November 6, 2009, both Cary Smoot and Preston were at the Buddy Lawson playground in Kenner. Preston had a black 9 mm Glock handgun positioned in his waistband and flashed it at Smoot. The following night, Chairs was driving a black SUV with Joshua Moss and Samuel Baker as passengers. Ernest Pollard, an admitted drug addict, approached the vehicle and asked Chairs for some "dope." Pollard saw Chairs had a MAC–11 firearm in his lap. Pollard drove around with the men for a while and then Chairs dropped him off.

Calvin Bardell, Louis Smoot, and Brandon Watson picked up Pollard in the early hours of November 8, 2009, and drove to Jesse Owens playground in hopes of purchasing marijuana. Bardell was driving with Louis Smoot seated in the front passenger seat. Watson was sitting behind Bardell, and Pollard sat behind Louis Smoot. When their vehicle neared the playground,

Preston, who was driving another vehicle with Chairs, Moss, and Baker as passengers, drove up. Preston and Chairs questioned Bardell about the identity of the person in the front passenger seat. Bardell saw one of the backseat passenger's in Preston's vehicle possessed a MAC–11.  A fearful Louis Smoot tried to hide from view and repeatedly told Bardell to drive away.  Pollard saw Preston reach for something.  Bardell sped away and gunfire erupted from Preston's vehicle which was following Bardell's vehicle.  Once they reached Jefferson Highway, the vehicles turned in opposite directions.  During a phone call between Pollard and Baker, Pollard overheard Chairs say he wanted "to light up everything in the car."

Cary Smoot was in River Ridge on November 8, 2009, when he heard at least 30 gunshots. Cary Smoot immediately called his cousin as he had seen him in the area the night before.  Louis Smoot told Cary Smoot that Chairs and Preston were shooting at him.  Cary Smoot called Preston to confront him.  Preston told Cary that he wasn't trying to shoot Louis and that he was just trying to scare him.  Preston told Cary Smoot that if he wanted Louis Smoot dead, he would have killed him.

Also, in the early morning hours of November 8, 2009, Timothy Williamson, who lived at the nearby Mark Twain apartment complex, awakened to a voice in the living room where P.D., his seven-year old step-daughter, and her cousin had been sleeping on an air mattress.  Williamson went to check on the girls and found P.D. lying on a bloody air mattress.  P.D.'s cousin told Williamson, "I don't know what's wrong. She just yelled out."  P.D.'s mother took P.D. into the bathroom where she noticed "something in her neck."  Williamson called 911, but P.D. died thereafter.  P.D.'s cause of death according to the autopsy was a gunshot wound to the neck.

An audio of the gunfire was captured on surveillance equipment located one block away from the Mark Twain apartment complex. The recording revealed a single audible gunshot followed by a rapid sequence of more gunfire occurring at 4:12 a.m. on November 8, 2009.

Kirk McKenzie spoke with Chairs and Preston the evening of November 8, 2009. McKenzie claimed that Chairs told him that he shot at Louis Smoot with his MAC–11 and that a little girl was killed. Chairs believed that he was responsible for the girl's death. Preston told McKenzie that he had tested his Glock, but had shot at the ground.

On November 9, 2009, Deputy Derrick McGee of the Jefferson Parish Sheriff's Office interviewed Cary Smoot about the death of P.D. Cary Smoot told Deputy McGee that in the early morning hours of November 8, 2009, Chairs and Preston were near the Jesse Owens playground and had been shooting at Louis Smoot.

Law enforcement arrested Preston on November 10, 2009, on the outstanding warrant for the attempted second degree murder of Cary Smoot. Law enforcement executed a search warrant at Preston's motel room. They recovered a Glock 9 mm, a .45 caliber firearm, two Glock magazines, 26.9 grams of marijuana, 7.6 grams of crack cocaine, and a scale. Preston was advised of his *Miranda* rights and transported to the Jefferson Parish Sheriff's Office detective bureau where he was advised of his rights a second time by Detective Brett Beavers. Preston initialed and signed a *Miranda* form, indicating he understood his rights, waived them and gave a statement.

After Preston was booked into the Jefferson Parish Correctional Center, he told Richard Brush, who was also in custody, that he was in jail because he "tried to kill that b**** Cary [Smoot]," and had shot up Cary Smoot's car with an AK–47. Preston told Brush that both he and Chairs fired their weapons while chasing Louis Smoot in a car near Jesse Owens playground.

The projectile responsible for P.D.'s death was recovered during the autopsy. It was undisputed that the projectile was not fired from the Glock but rather was consistent with having been fired from the MAC–11. The bullet that went through the wall of P.D.'s apartment traveled at an angle which allowed it to pass over P.D.'s sleeping cousin and strike P.D.

On February 13, 2012, Preston withdrew his prior pleas to counts five and six and entered pleas of guilty to each of those counts.[6] After Preston waived sentencing delays, the Trial Court sentenced Preston as to count five to 15 years, the first two years to be served without the benefit of parole, probation, or suspension of sentence. The Court sentenced Preston to 10 years without the benefit of parole, probation or suspension of sentence as to count six. Both sentences were ordered to be served at hard labor and to run concurrently with one another.[7]

Preston was tried before a jury on February 13 through 15, 2012, as to counts one and two, and was found guilty as charged of attempted second degree murder and second degree murder.[8] On February 27, 2012, the Trial Court denied Preston's motion for new trial.[9] The Court sentenced Preston to serve life imprisonment without benefit of parole, probation, or suspension of sentence as to count two. As to count one, the Trial Court sentenced Preston to fifty years without benefit of parole, probation, or suspension of sentence. Both sentences were ordered to be served at hard

---

[6]St. Rec. Vol. 4 of 10, Minute Entry 2/13/10; St. Rec. Vol. 5 of 10, Plea Transcript, 2/13/10.

[7]St. Rec. Vol. 4 of 10, Minute Entry, 2/13/10; Commitment Order, 2/13/12; St. Rec. Vol. 5 of 10, Plea Transcript, 2/13/10.

[8]St. Rec. Vol. 4 of 10, Trial; Minutes, 2/13/12, 2/14/12, 2/15/12; Verdict, 2/15/12; St. Rec. Vol. 5 of 10, Trial Transcript, 2/13/12; St. Rec. Vol. 6 of 10, Trial Transcript (continued), 2/13/12; Trial Transcript, 2/14/12; St. Rec. Vol. 7 of 10, Trial Transcript (continued), 2/14/12; Trial Transcript, 2/15/12; St. Rec. Vol. 8 of 10, Trial Transcript (continued), 2/15/12; St. Rec. Vol. 9 of 10, Trial Transcript (continued), 2/15/12.

[9]St. Rec. Vol. 4 of 10, Motion for New Trial, 2/23/12; Minute Entry, 2/27/12; St. Rec. Vol. 9 of 10, Sentencing Transcript, 2/27/12.

labor and to be served consecutively to one another as well as to the sentences previously imposed as to counts five and six.[10]

On direct appeal to the Louisiana First Circuit Court of Appeal, Preston argued that the evidence was insufficient to support his convictions for the attempted second degree murder of Cary Smoot and the second degree murder of P.D.[11]  The Louisiana Fifth Circuit affirmed the convictions and sentences on May 16, 2013, finding no merit in the issue raised.[12]

The Louisiana Supreme Court denied Preston's related writ application without stated reasons on January 10, 2014.[13]  His conviction was final under federal law ninety (90) days later, on April 10, 2014, when he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999)(time for filing for certiorari with the United States Supreme Court is included in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

On January 5, 2015, Preston submitted to the state trial court an application for post-conviction relief and brief in which he raised the following grounds for relief:[14] (1) he was denied a fair and impartial jury as the State made peremptory challenges based on race and/or gender in

---

[10]St. Rec. Vol. 4 of 10, Sentencing Minutes, 2/27/2012; Commitment Order, 2/27/12; St. Rec. Vol. 9 of 10, Sentencing Transcript, 2/27/12.

[11]St. Rec. Vol. 9 of 10, Appeal Brief, 2012-KA-798, 12/11/12.

[12]*State v. Preston*, 118 So. 3d 1129 (La. App. 5th 2013); St. Rec. Vol. 2 of 10, 5th Cir. Opinion, 2012-KA-798, 5/16/13.

[13]*State v. Preston*, 130 So.3d 318 (La. 2014); St. Rec. Vol. 2 of 10, La. S. Ct. Order, 2013-KO-1431, (1/14/14).

[14]St. Rec. Vol. 2 of 10, Application for Post-Conviction Relief, 1/5/15 (dated 12/22/14).

violation of *Batson v. Kentucky*[15]; (2) he was denied effective assistance of counsel in failing to object during jury selection; (3) he was denied effective assistance of counsel in failing to object to prejudicial introduction of gang affiliation; and (4) he was denied due process and equal protection due to the existence of prosecutorial misconduct.  After receiving a response from the State, Preston filed a motion to amend claim number three included in his application for post-conviction relief.  Preston included as exhibits portions of the trial transcript.[16]

The Trial Court granted Preston's motion to amend finding no substantial difference was made.[17]  The Trial Court denied the writ application on March 16, 2015, finding claims one and four were procedurally barred from post-conviction review under La. Code Crim. P. 930.4(B), which prevents review of claims that were not raised in the proceedings prior to conviction, and declaring claims two and three to be without merit.[18]  The Louisiana Fifth Circuit denied Preston's writ application finding no error in the trial court's rulings on May 12, 2015.[19]  The Louisiana Supreme Court also denied Preston's related writ application attaching the Trial Court's written reasons for denying the application on May 27, 2016.[20]

---

[15]*Batson v. Kentucky*, 476 U.S. 79 (1986).  In *Batson,* the United States Supreme Court held that peremptory challenges could not be used to exclude jurors solely because of race unless a neutral reason for the peremptory challenge could be shown.

[16]St. Rec. Vol. 2 of 10, State's Response to Post-Conviction Relief, 3/12/15; Motion to Amend Post Conviction Relief Application Claim #3, 4/2/15; St. Rec. Vol. 3 of 10, Exhibits to Motion to Amend.

[17]St. Rec. Vol 3 of 10, Trial Court Order Re Motion to Amend, 3/16/15.

[18]St. Rec. Vol 3 of 10, Trial Court Order, 3/16/15.

[19]St. Rec. Vol. 3 of 10, 5th Cir. Order, 15-KA-253, 5/12/15.

[20]*State ex rel. Preston v. State*, 193 So.3d 128 (La. 2016) (per curiam); St. Rec. Vol. 3 of 10, La. Supreme Court Order, 15-KH-1184, 5/27/16.

## II.    <u>Federal Habeas Petition</u>

On July 20, 2016, the clerk of this Court filed Preston's petition for federal habeas corpus relief in which he asserts four grounds for relief[21]: (1) he was denied a fair and impartial jury in violation of *Batson v. Kentucky*; (2) he was denied effective assistance of counsel when his counsel failed to object to the State's peremptory strikes during jury selection; (3) he was denied effective assistance of counsel when his counsel failed to object to gang evidence; (4) prosecutorial misconduct based on the introduction of gang affiliation.

The State filed a response in opposition to the petition arguing that Preston's first and fourth claims are procedurally barred. With regard to the second and third claims, the State argues counsel's performance met the standards set forth in *Strickland*.[22]

## III.    <u>General Standards of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[23] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on July 19, 2016.[24] The threshold questions on habeas review under the amended

---

[21]Rec. Doc. No. 1, pp. 4, 6, 7, 8, 19-35.

[22]Rec. Doc. No. 13.

[23]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[24]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). Preston signed and dated the petition on July 19, 2016, which is the earliest date appearing in the record on which he could have delivered the pleadings to prison officials for mailing to a federal court.

statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default." *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State did not specifically address timeliness in its response to Preston's petition. However, based on the record, Preston's petition was timely filed. The State contends that two of Preston's claims are in procedural default.[25]  The State argues the other two issues are meritless.[26]

## IV.    Procedural Default Claim Nos. 1 & 4

The State recognizes that two issues raised by Preston are in procedural default, having been dismissed by the state courts as procedurally barred from review.  These issues are (1) Preston's claim that he was denied a fair and impartial jury when the State made peremptory challenges based on race and/or gender in violation of *Batson v. Kentucky*; and (2) Preston's claim of prosecutorial misconduct based on references made by the State and its witnesses to Preston's gang affiliation.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Amos v. Scott*, 61 F.3d 333, 338 & n.15 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)).  The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review. *Coleman*, 501

---

[25]Rec. No. 13, pp. 11-13.

[26]*Id.*, pp. 15-18.

U.S. at 731-32; *Amos*, 61 F.3d at 338.  This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

Preston raised both of his claims for the first time in his petition for post-conviction relief. The Trial Court found that Preston was procedurally barred from raising the claims under La. Code Crim. P. art 930.4(B) because he failed to provide any reason for failing to raise the claim in proceedings prior to his conviction.  The Louisiana Supreme Court, in adopting the Trial Court's written reasons for denying Preston's post-conviction relief application, denied Preston's related writ application.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)(when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

The Court must consider whether the bar to review relied upon by the Louisiana courts prohibit consideration of Preston's claims of improper jury selection and prosecutorial misconduct based on the introduction of gang affiliation on federal habeas corpus review.  As discussed above, for a state-imposed procedural bar to prevent review by this federal habeas court, the bar must be both independent and adequate.

### A.    <u>Independent State Grounds</u>

A dismissal is independent of federal law when the last state court "clearly and expressly" indicated that its judgment rests on a state procedural bar.  *Amos*, 61 F.3d at 338 (citation omitted). The Louisiana Supreme Court approved the denial of relief based on a state statutory rule to bar relief of Preston's claims one and four, citing La. Code. Crim. art 930.4(B).  Article 930.4(B)

prohibits review of a claim that was known and inexcusably not raised in the proceedings leading to the conviction.

The state courts' rulings were based on Louisiana law setting forth the requirements for preservation and presentation of claims on appellate and post-conviction review. These rulings were therefore independent of federal law and relied strictly on state procedural requirements. *See Bennett v. Whitley*, 41 F.3d 1581, 1583 (5th Cir. 1994)(Art. 930.4); *Thomas v. Cain,* No. 11-2103, 2012 WL 1885088, at *4 (E.D. La. May 23, 2012) *(Lemelle, J.) (same); *Washington v. Cain,* No. 98–0584, 2000 WL 863980, at *4 (E.D. La. June 27, 2000) ((Duplantier, J.) (same).

## B.    Adequate State Grounds

The question of the adequacy of a state procedural bar is itself a federal question. *Beard v. Kindler*, 558 U.S. 53, 60 (2009) (citing *Lee v. Kemna*, 534 U.S. 362, 375 (2002)). To be adequate, the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Walker v. Martin*, 562 U.S. 307, 316-17 (2011); *Glover*, 128 F.3d at 902. A state procedural rule, however, "can be 'firmly established and 'regularly followed,'– even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Beard*, 558 U.S. at 60-61.

In evaluating the adequacy of the rules applied to bar a petitioner's claim, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *accord Turner v. Johnson*, 46 F. Supp. 2d 655, 674 (S.D. Tex. 1999). Rather, a federal court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the underlying proceeding fundamentally unfair. *See Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAfee v.

*Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985) and *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)).

In keeping with this, a state procedural rule that is applied arbitrarily or in an unexpected manner

may be considered inadequate to prevent federal review. *Martin v. Maxey*, 98 F.3d 844, 847 (5th

Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must
> evaluate whether the rule was actually applicable on the particular facts of the
> case. Otherwise, state courts could disregard federal rights with impunity simply
> by using the word "waived."

*United States ex rel Bradley v. Clark*, No. 99-C-1785, 2002 WL 31133094, at *4 n.2 (N.D. Ill.

July 18, 2002).

For this reason, when state courts apply a procedural bar that has no foundation in the

record or basis in state law, the federal courts need not honor that bar. *Davis v. Johnson*, No. 00-

684, 2001 WL 611164, at *4 n.10 (N.D. Tex. May 30, 2001); *see also Johnson v. Lensing*, No.

99–0005, 1999 WL 562728, at *4 (E.D. La. July 28, 1999) (Berrigan, J.) (finding La. Code  Crim.

Proc. Ann. art. 930.8 bar was not adequate because it was not properly applied under the

circumstances of the case); *Poree v. Cain*, No. 97–1546, 1999 WL 518843, at *4 (E.D. La. July

20, 1999) (Mentz, J.) (finding Art. 930.8 was not adequate to bar review because it was

misapplied).  It is not, however, within the federal court's province to disagree with the application

of the bar; it is only to determine its adequacy.  *Lee v. Cain*, No. 03–2626, 2004 WL 2984274, at

*1 n.2 (E.D.La. Dec. 6, 2004) (Vance, J.) (addressing La. Code Crim. Proc. Ann. art. 930.3 as

applied to ineffective assistance of counsel claim).  Thus, where such foundation and basis does

exist, as it does in the case of these two issues, the bar must stand.

As noted above, the state trial court barred Preston's claims one and four, pursuant to La.

Code Crim. P. art. 930.4(B), for failure to raise the claims in an appropriate manner.  In addition,

the state courts found that Preston failed to provide a merited excuse for his failure to do so. The

record supports the imposition of this procedural bar. Preston does not and cannot contest that these barred claims were not presented in earlier proceedings when they could have been.

The federal courts have held that the bars imposed under Article 930.4(b) are adequate to foreclose federal review of a claim barred thereunder by the state courts. *Cf. Thomas,* 2012 WL 1885088, at *4 (E.D. La. May 23, 2012) (Lemelle, J.)(finding Article 930.4(B) independent and adequate to bar claim challenging expert witness testimony); *Simmons v. Cain,* 2008 WL 2185422, at *6 (E.D.La. May 20, 2008) (Berrigan, J.) (finding Article 930.4(B) and (C) independent and adequate to bar trial errors raised on post-conviction that were not raised at trial or on appeal); *Monroe v. Cain*, No. 05-0929, 2006 WL 5507856, at *8 (E.D.La. Oct. 17, 2006) (finding Article 930.4(B) and (C) independent and adequate to bar prosecutorial misconduct claims and others not raised at trial or on appeal), *adopted as modified on other grounds, Monroe v. Cain*, No. 05-0929, 2008 WL 818968, at *1 (E.D.La. Mar. 24, 2008) (Berrigan, J.).

For the foregoing reasons, the procedural bars imposed on Preston's arguments regarding the State's unconstitutional use of peremptory challenges (claim one) and prosecutorial misconduct based on the introduction of gang affiliation (claim four) are supported by the record and are adequate to foreclose review by this federal court. Because the Louisiana courts' decisions rested on independent and adequate state rules of procedural default, this Court will not review these two claims unless Preston has established one of the following exceptions.

### C.    <u>Cause and Prejudice</u>

A federal habeas petitioner may be excluded from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice."

*Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731–32); *Amos*, 61 F.3d at 338–39 (citing *Harris*, 489 U.S. at 262); *see Engle v. Isaac*, 456 U.S. 107, 128 & n.33 (1982).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id.* at 486.

In this case, Preston has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts. The Court's review of the record does not support a finding that any factor external to the defense prevented Preston from raising the claims in a procedurally proper manner. In connection with his claims that counsel's ineffective assistance contributed to the default, as is further discussed in this report, those claims are without merit and do not stand as cause for the default. The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n.43). Having failed to show an objective cause for his default, the Court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. *Ratcliff v. Estelle*, 597 F.2d 474, 477 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681–82 (5th Cir. 1977)).

Preston's defaulted arguments are therefore procedurally barred from review by this federal habeas corpus court. *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (finding habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to

comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998). [27]

### D.    <u>Fundamental Miscarriage of Justice</u>

Preston may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claims are not reviewed. *Hogue*, 131 F.3d 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray,* 477 U.S. at 496; *Glover*, 128 F.3d at 902. To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Campos v. Johnson*, 958 F.Supp. 1180, 1195 (W.D. Tex.1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."). When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Preston does not present any claim and the record contains nothing to suggest or establish his actual innocence on the underlying conviction. His claims instead address alleged procedural failings in the state criminal proceedings and ineffective assistance of counsel and not his actual innocence. He presents no evidence or argument of the kind of actual innocence that would excuse his procedural default. He, therefore, has failed to overcome the procedural bar to his claims. The

---

[27]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument *sua sponte*. *Id.*

two claims, that he was denied a fair and impartial jury when the State made peremptory challenges based on race and/or gender in violation of *Batson v. Kentucky* (claim one*)* and prosecutorial misconduct based on references made by the State and its witnesses to Preston's gang affiliation (claim four), are procedurally barred and should be dismissed with prejudice.

## V.    <u>Standards for a Merits Review</u>

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no

'fairminded disagreement' on the question." *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id*. "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is

whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## VI.    <u>Ineffective Assistance of Counsel (Claim Nos. 2 and 3)</u>

Preston alleges that he received ineffective assistance of counsel on two grounds: (1) trial counsel failed to object when the State made peremptory challenges due to race and/or gender in violation of *Batson v. Kentucky*; and (2) trial counsel failed to object to references at trial to gang affiliation.

Preston asserted these arguments in his state application for post-conviction relief. Upon its review pursuant to the standards set forth in *Strickland*, 466 U.S. at 668 and related state case law, the state trial court determined that Preston had failed to show any of the requirements to prove an ineffective assistance of counsel claim related in failing to object to the State's use of peremptory challenges.[28] The Court reasoned that Preston had been represented at trial by an experienced criminal defense attorney who performed well in her representation of Preston, despite overwhelming evidence of his guilt. The Court also explained it was defense counsel's duty to raise issues before and during trial if she found them to be well-founded and there was nothing in the record to cause the Court to substitute its judgment for that of defense counsel. With regard to

---

[28]St. Rec. Vol. 3 of 10, Trial Court Order, 3/16/15.

Preston's claim that his counsel had been ineffective in failing to object to references of gang affiliation, the Court found that the evidence was admissible and, therefore, any objection raised at trial would not have been successful.

The Louisiana Fifth Circuit found no error in that ruling.[29]  In the last reasoned opinion, the Louisiana Supreme Court also concluded that Preston failed to demonstrate that he received ineffective assistance of counsel at trial under the *Strickland* standards.[30]

The issue of ineffective assistance of counsel is a mixed question of law and fact.  *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

The Supreme Court's holding in *Strickland*, 466 U.S. at 668, relied upon by the state courts, is the appropriate standard for judging the performance of counsel when a defendant enters a plea of guilty.  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  *Strickland*, 466 U.S. at 687.  The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992).  In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  *Amos*, 61 F.3d at 348.

---

[29]St. Rec. Vol. 3 of 10, 5th Cir. Order, 5/12/15.

[30]*State ex rel. Preston v. State*, 193 So.3d 128 (La. 2016)(per curiam); St. Rec. Vol. 3 of 10, La. S. Ct. Order, 2015-KH-1184, 5/27/16.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v.*

*Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller*, 200 F.3d at 282 (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 690). The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)). This Court

must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690; *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise by the petitioner. *Strickland*, 466 U.S. at 689; *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008); *Moore*, 194 F.3d at 591.  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. *Strickland*, 466 U.S. at 689; *Neal*, 286 F.3d at 236–37; *Clark v. Johnson*, 227 F.3d 273, 282–83 (5th Cir. 2000).  Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997) and *Mann v. Scott*, 41 F.3d 968, 983–84 (5th Cir. 1994)).

In the instant case, Preston fails to establish that his counsel's performance was objectively unreasonable or deficient under the circumstances of his case.

## A.    Failure to Object to the State's Use of Peremptory Challenges

Preston argues that the prosecution impermissibly used peremptory challenges to exclude African-Americans and females from the jury venire and that his trial counsel failed to object to the State's misuse of peremptory challenges during jury selection.  He argues that the State back struck two females.  He contends that according to his "lay memory" either one or possibly both of the women were African-American.

In *Batson,* the Supreme Court held that purposeful racial discrimination in the use of peremptory strikes of prospective jurors violates the Equal Protection Clause.  *Batson*, 476 U.S. at

89.   In *J.E.B. v. Alabama.*, 511 U.S. 127, 130-31 (1994), the Supreme Court extended this prohibition to include gender.   In evaluating whether a petitioner has established a *Batson* violation, a three-step analysis is employed, with the first step requiring a petitioner to make a prima facie showing that a peremptory challenge has been exercised on the basis of race or gender. *Stevens v. Epps*, 618 F.3d 489, 492 (5th Cir. 2010).

In the instant matter, Preston has not demonstrated a *prima facie* case of racial or gender discrimination.   While he claims that the State struck two African-American females from the venire, he provides no evidence to support his unsupported allegation that the State misused its peremptory strikes.   He offers no reasons for his failure to do so here or in the state courts.   While there is no transcript of the *voir dire* from his trial, given there was no *Batson* objection made during jury selection, the transcript would not assist in analyzing Preston's claim as it would not have revealed the race of the prospective jurors.   However, in contrast to his claim that the prosecution struck African-American females from the venire, Preston admitted in his motion for new trial that the jury foreperson was an African-American female.[31]   Further, the record provides no evidence or any indication that peremptory challenges were used to discriminate against females.   To the contrary, it appears from the minutes of jury selection that the State used its peremptory challenges to strike both men and women, and the jury was composed of six men and six women.[32]

Preston has failed to provide even minimal evidence in support of his claim, either here or in the state courts.   Accordingly, Preston has clearly failed to satisfy his burden of proof to show that his counsel failed to make what would have been a meritorious objection which would entitle

---

[31]St. Rec. Vol. 2 of 10, Motion for New Trial, 2/23/12.

[32]St. Rec. Vol. 4 of 10, Minute Entry, 2/13/12.

him to relief under *Strickland. See Turner v. Epps,* No. 07-77, 2010 WL 653880, at *7 (N.D. Miss. Feb 19, 2010) ("As Petitioner cannot establish that any minority venire person was struck by the State, much less that they were struck with a discriminatory intent, he cannot establish ineffective assistance of counsel on this conclusory argument"); *Bell v. Director, TDCJ-CID*, No. 03-36, 2005 WL 977771, at *6 (E.D. Tex. Nov. 2, 2005)(citations omitted) (Petitioner's claim that a juror was improperly struck "is a conclusory allegation ... insufficient to support a petition for a writ of habeas corpus."); *Eastridge v. United States*, 372 F.Supp.2d 26, 61 (D.D.C. May 26, 2005) ("Petitioners cannot establish improper application of peremptory challenges because they present no evidence of selective exclusion and cannot produce evidence of the racial composition of the venire."). Therefore, the state courts' denial of relief on this claim was not contrary to, or an unreasonable application of *Strickland.* Preston is not entitled to relief on this claim.

### B.      Failure to Object to Introduction of Gang Affiliation

Preston argues that his trial counsel rendered ineffective assistance in failing to object at trial to references made by the prosecution and the witnesses to Preston's gang affiliation.

In *State v. Weatherspoon*, 948 So.2d 215 (La. App. 5th Cir. 2006), the Louisiana Supreme Court held that evidence of gang affiliation was relevant in a second degree murder trial to show the defendant's motive of specific intent to injure. The Trial Court, relying on *Weatherspoon*, found that references to gang affiliation were relevant to establish Preston's motives. The Trial Court found that any objection by defense counsel would not have been successful and Preston had not met his burden under *Strickland*. The Louisiana Supreme Court, in finding that Preston had failed to demonstrate he had received ineffective assistance of counsel under *Strickland*, adopted the Trial Court's findings.

First, the Court recognizes that it does not sit to review the state courts application of its evidentiary rules. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Gonzales v. Thaler*, 643 F.3d 425, 429 (5th Cir. 2011); *Jernigan*, 980 F.2d at 298. The Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. at 67-68; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975)). The Court will give deference to the state courts' determination that the evidence was admissible.

Thus, because the evidence of gang affiliation was admissible, any objection to the evidence by Preston's counsel would have been meritless. Counsel does not act deficiently when he fails to urge a meritless or baseless position. *See Clark*, 673 F.3d at 429 ("failure to assert a meritless objection cannot be grounds for a finding of deficient performance") (quoting *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997)); *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.'") (quoting *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)); *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); *see also United States v. Kimler,* 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the

issue."). Therefore, the state courts' denial of relief on this claim was not contrary to, or an unreasonable application of *Strickland*. Preston is not entitled to habeas relief on this claim

## VII.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Preston's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[33]

New Orleans, Louisiana, this 15th day of February, 2017

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[33]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.